IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE PEELUA, | ) | CIVIL NO. 10-00090 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER:  (1) GRANTING |
| | ) | DEFENDANTS IMPAC FUNDING |
| vs. | ) | CORPORATION, COUNTRYWIDE |
| | ) | HOME LOANS, INC., |
| IMPAC FUNDING CORPORATION | ) | COUNTRYWIDE BANK, FSB, |
| dba IMPAC LENDING GROUP, a | ) | COUNTRYWIDE FINANCIAL |
| California Corporation, et al., | ) | CORP., AND BANK OF |
| | ) | AMERICA'S MOTION FOR |
| Defendants. | ) | JUDGMENT ON THE |
| | ) | PLEADINGS; AND |
| | ) | (2) DISMISSING CLAIMS |
| | ) | AGAINST ADDITIONAL |
| _____ | ) | DEFENDANTS |

**ORDER:  (1) GRANTING DEFENDANTS IMPAC FUNDING
CORPORATION, COUNTRYWIDE HOME LOANS, INC.,
COUNTRYWIDE BANK, FSB, COUNTRYWIDE FINANCIAL CORP.,
AND BANK OF AMERICA'S MOTION FOR JUDGMENT ON THE
PLEADINGS; AND (2) DISMISSING CLAIMS AGAINST ADDITIONAL
DEFENDANTS**

## I. INTRODUCTION

On January 21, 2010, Plaintiff Wayne Peelua ("Plaintiff") filed this

action in Hawaii state court alleging claims against Impac Funding Corp.

("Impac"), Countrywide Home Loans, Inc. ("CWHL"), Countrywide Bank, FSB

("CWB"), Countrywide Financial Corp. ("CWFC"), Mortgage Electronic

Registration Corporation ("MERS"), Hawaii Financial Services Corp. ("HFS"),

Tera Paleka ("Paleka"), Deutsche Bank National Trust Company, as Trustee under

the Pooling and Servicing Agreement Relating to the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-2 ("Deutsche Bank"), Indymac Federal Bank ("Indymac Bank"), Indymac Loan Services ("Indymac Loan"), Bank of America ("BOA"), and GMAC Corporation ("GMAC") (collectively, "Defendants"), for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and various state law claims stemming from a mortgage transaction and subsequent non-judicial foreclosure concerning real property located at 457 Lower Honoapiilani Road, Lahaina, Hawaii (the "subject property").

The action was subsequently removed to this court and currently pending is Defendants Impac, CWHL, CWB, CWFC, and BOA's ("Moving Defendants") Motion for Judgment on the Pleadings, in which they argue that the Complaint fails to state a cognizable claim. Based on the following, the court GRANTS Moving Defendants' Motion. Because several of Moving Defendants' arguments apply equally to all Defendants, the court further dismisses several claims as to all Defendants.

## II.  **BACKGROUND**

As alleged in the Complaint, Plaintiff contacted HFS and Paleka in their professional capacity as mortgage brokers and solicitors to help Plaintiff

refinance his existing mortgage loan on the subject property. Compl. ¶ 16. As a result, on or about January 23, 2007, Plaintiff entered into two separate mortgage loans with Impac secured by the subject property -- one in the amount of $789,000 (the "first mortgage") and the other in the amount of $200,000 (the "second mortgage"). *Id.* ¶¶ 17-25. Both mortgages identified MERS as mortgagee. *Id.* ¶¶ 21, 25.

The Complaint alleges that HFS, Paleka, and MERS engaged in misconduct in consummating this loan transaction, including, for example, (1) placing Plaintiff in a high risk loan that he had a high probability of failing to pay and which provided him no benefits, *id.* ¶¶ 28, 31; (2) making false representations knowing that Plaintiff would rely on them; *id.* ¶ 35; and (3) failing to provide Plaintiff the Federal Truth in Lending Act Disclosure, the Notice of Right to Cancel, an Initial Good Faith Estimate, and other required initial disclosures and final disclosures. *Id.* ¶ 39.

In November 2008, Plaintiff was notified by Countrywide,[1] as an agent of Impac, that Plaintiff was delinquent on his mortgage loan payments. *Id.* ¶ 43. Although not clear, the Complaint appears to assert that Indymac Bank and Indymac Loan also notified Plaintiff that he was obligated to them based on the

---

[1] The Complaint defines "Countrywide" collectively as CWHL, CWB, and CWFC.

second mortgage.  *Id.* ¶ 44.  With that said, however, Plaintiff was also contacted

by BOA regarding possible payment options on the first mortgage loan to stop any

foreclosure proceedings.  *Id.* ¶ 46.  BOA ultimately did not assist Plaintiff, *id.*

¶ 48, and on January 29, 2009, Deutsche Bank filed a Notice of Mortgagee's

Intention to Foreclose Under Power of Sale.  *Id.* ¶ 49.

On April 22, 2009, the subject property was sold to Deutsche Bank.

*Id.* ¶ 50.  Defs.' Exs. D (Mortgagee's Affidavit of Foreclosure Under Power of

Sale), E (Quitclaim Deed & Conveyance Tax Certificate).[2]  After Plaintiff refused

to vacate the subject property, Deutsche Bank filed an ejectment action in Hawaii

state court (the "state court ejectment action").  Compl. ¶ 56; Defs.' Ex. G

(Verified Complaint for Ejectment).  On November 13, 2009, a judgment of

possession and a writ of possession were issued in favor of Deutsche Bank, and the

appeal is currently pending.  Compl. ¶ 57, Defs.' Exs. I (Judgment for Possession),

J (Notice of Appeal).

On January 21, 2010, Plaintiff filed this action in the Second Circuit

Court of the State of Hawaii, alleging claims entitled (1) "Negligence and Breach

---

[2]  Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of Moving
Defendants' Exhibits D through K, which are public records.  *See Mir v. Little Co. of Mary
Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (providing that a court may "take judicial notice of
matters of public record outside the pleadings and consider them for purposes of a motion to
dismiss") (quotations omitted).

of Fiduciary Duties" against HFS, Paleka, Impac, and MERS (Count I);

(2) "Deceptive and Unfair Trade Practices" against HFS, Paleka, Impac, and

MERS (Count II); (3) "Fraud and Predatory Lending" against HFS, Paleka, Impac,

and MERS (Count III); (4) "Federal Truth in Lending Act and RESPA Violations"

against HFS, Paleka, Impac, and MERS (Count IV); (5) "Negligence and

Deceptive and Unfair Trade Practices" against all Defendants (Count V); and

(6) "Wrongful Foreclosure and Ejectment" against all Defendants (Count VI).

Defendants CWB, CWHL, CWFC, and BOA subsequently removed the action to

this court.

On December 22, 2010, Moving Defendants filed their Motion for

Judgment on the Pleadings.[3]  On March 2, 2011, Plaintiff filed his Opposition,[4] and

Moving Defendants filed their Reply on March 7, 2011.  Pursuant to Local Rule

7.2(d), the court finds that it can determine this Motion without a hearing.

---

[3]  MERS, Deutsche Bank, HFS, Paleka, Indymac Bank, Indymac Loan, and GMAC have
not appeared in this action, but Moving Defendants attempt to bring this Motion on behalf of
MERS and Deutsche Bank as well.  Given that no counsel has appeared on behalf of MERS or
Deutsche Bank, the court rejects Moving Defendants' attempt to bring this Motion on behalf of
un-served Defendants who have entered no appearance in this action.

[4]  Plaintiff's Opposition was due on February 28, 2011, and therefore was filed late on
March 2, 2011.  Plaintiff did not seek an extension to file his Opposition, and Moving
Defendants ask that the court strike it as improper.  *See* Defs.' Reply 1-2.  Although the court
could strike this late-filed paper, such sanction under these circumstances is not warranted.
Plaintiff is warned, however, that the court expects parties to follow the rules of this court and
further violation of this court's rules will result in sanctions.

# III. STANDARDS OF REVIEW

## A. Rule 12(c)

A party may make a motion for judgment on the pleadings at any time after the pleadings are closed, but within such time as not to delay the trial. Fed. R. Civ. P. 12(c). In considering a Rule 12(c) motion, the court must accept as true all factual allegations in the complaint, and construe them in the light most favorable to the non-moving party. *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009). A motion for judgment on the pleadings should be granted when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

Prior to *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Ninth Circuit recognized that Rule 12(c) motions are virtually identical to Rule 12(b)(6) motions, and applied the same standard of review to both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review). Following *Iqbal*, courts have applied *Iqbal* to Rule 12(c) motions. *E.g.*, *Wahl v. Am. Sec. Ins. Co.*, 2010 WL 1881126, at *3 (N.D. Cal. May 10, 2010) (applying the *Iqbal* standard and citing cases); *Point Ruston, L.L.C. v. Pac. Nw. Reg'l Council of the United Bhd. of*

*Carpenters & Joiners*, 658 F. Supp. 2d 1266, 1273 (W.D. Wash. 2009).

Accordingly, pursuant to *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 1950.

## B.    Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity."  "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud."  *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, a plaintiff must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  *Id.* (citation and quotation signals omitted).  Where there are multiple defendants, a plaintiff cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]."  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Vess v.*

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

**C.      Sua Sponte Dismissal Pursuant to Rule 12(b)(6)**

The court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on its own motion.  *See Omar v. Sea-Land Serv., Inc*., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the claimant cannot possibly win relief."); *Ricotta v. California*, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim *sua sponte* for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged).

///

///

///

# IV.  DISCUSSION

Moving Defendants specifically challenge each of the six claims of the Complaint.  The court addresses each claim in turn.

## A.    Negligence and Breach of Fiduciary Duties (Count I)

In support of Count I, the Complaint asserts that Defendants HFS, Paleka, Impac, and MERS were negligent and breached their fiduciary duties by placing Plaintiff into loans that (1) they knew placed Plaintiff in a high risk of failure due to this debt income ratio; (2) provided Plaintiff no benefit; (3) endangered Plaintiff's investment due to the real estate market "free fall;" and (4) were not pursuant to generally accepted underwriting practices because Defendants did not determine the predictability of Plaintiff's income staying at the stated level.  Compl. ¶ 28.

Moving Defendants argue, and the court agrees, that these allegations are insufficient to establish a claim for negligence or breach of fiduciary duty against Impac or MERS because they fail to establish any duty to Plaintiff.[5] Specifically, it is well-settled that absent some special circumstances, a borrower-lender relationship is not fiduciary in nature and does not create a duty sufficient to

_____

[5]  Because the court dismisses this claim for failure to allege a duty to as to Impac and MERS, the court need not address Moving Defendants' argument that the economic loss rule bars this claim.

support a claim for breach of fiduciary duty and/or negligence. *See McCarty v. GCP Mgmt., LLC*, 2010 WL 4812763, at \*5 (D. Haw. Nov. 17, 2010) (collecting and discussing caselaw on both breach of fiduciary duty and negligence claims). For example, a lender generally owes no fiduciary duty to a borrower unless "it excessively controls or dominates the borrower [such that] for all intents and purposes acting against its will." *Periguerra v. Meridas Capital, Inc*., 2010 WL 395932, at \*7 (N.D. Cal. Feb. 1, 2010) (discussing California caselaw and *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002)). Alternatively, "a special relationship might exist if a bank offers any provision of trust or fiduciary services, or otherwise agrees to serve as a financial advisor." *River Colony Estates Gen. P'ship. v. Bayview Fin. Trading Grp.*, 287 F. Supp. 2d 1213, 1224 (S.D. Cal. 2003).

The Complaint includes no allegations suggesting -- plausibly or otherwise -- that Plaintiff had a special relationship with either MERS and/or Impac. Although Plaintiff argues that Defendants acted outside their role of typical lenders by knowingly placing Plaintiff in a loan that was improper for Plaintiff and that Plaintiff would ultimately not be able to pay, *see* Pl.'s Opp'n 7-9, such knowledge on Defendants' part does not create a special relationship and/or special circumstances in an otherwise arms-length transaction. *See, e.g.*, *Sakugawa v.*

*Countrywide Bank F.S.B.*, --- F. Supp. 2d ----, 2011 WL 572528, at *10 (D. Haw.

Feb, 14, 2011) (rejecting breach of fiduciary duty claim alleging a failure to advise

Plaintiff of likely default because "Plaintiff makes no allegations suggesting that

her relationship to Defendants is anything other than an ordinary, arms-length,

lender-borrower relationship").  Thus, Plaintiff has not alleged that any special

circumstances existed and has therefore failed to state a claim for breach of

fiduciary duty or negligence against MERS or Impac.[6]

      Accordingly, the court GRANTS the Motion as to Count I of the

Complaint as to MERS and Impac, with leave to amend.

**B.    "Deceptive and Unfair Trade Practices" (Count II), and "Negligence and Deceptive and Unfair Trade Practices" (Count V)**

      Both Count II and Count V appear to assert claims for violation of

Hawaii Revised Statutes ("HRS") § 480-2.  Although it is unclear to the court why

the Complaint contains two separate counts alleging the same violation, in support

of Count II, the Complaint alleges:

---

[6] Unlike lenders, brokers generally owe fiduciary duties to their clients.  *See, e.g.*, *Mortensen v. Home Loan Ctr., Inc.*, 2009 WL 113483, at *4 (D. Ariz. Jan. 16, 2009) (citing cases indicating that mortgage brokers have fiduciary duties to their clients); *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1119 (E.D. Cal. 2009) (same); *cf. Han v. Yang*, 84 Haw. 162, 172, 931 P.2d 604, 614 (Haw. App. 1997) ("A real estate broker is a fiduciary and consequently must exercise the 'utmost good faith, integrity, honesty, and loyalty,' and must diligently uphold a legally imposed duty of due care.") (citations omitted).  The court does not determine at this time whether the Complaint's allegations are sufficient as to HFS and/or Paleka.

30.    DEFENDANTS HFS, PALEKA, IMPAC, and
MERS held themselves out as having knowledge and/or
skill regarding matters peculiar to the lending business,
including mortgage loans, real estate lending, application
of state and federal laws regarding mortgage loans,
qualification of borrowers regarding loans, and
appropriateness of loans for particular transactions.

31.    DEFENDANTS HFS, PALEKA, IMPAC, and
MERS made the loans to PEELUA when they knew, or
should have known, that it was not likely that PEELUA
would be able to repay the loans and that PEELUA had a
likelihood of defaulting on the loans and suffering injury
and damages as result.

32.    In their dealings with PEELUA, and by making the
loans described herein to PEELUA, DEFENDANTS
HFS, PALEKA, IMPAC, and MERS engaged in unfair
and deceptive trade practices in violation of HRS § 480-
2, in that their actions offended established public
policies and were unethical, oppressive, unscrupulous,
and/or substantially injurious to customers, including
PEELUA.

Compl. ¶¶ 30-32.  Count V asserts that all Defendants "engaged in unfair and

deceptive trade practices in violation of HRS § 480-2, in that their actions offended

established public policies and were unethical, oppressive, unscrupulous, and/or

substantially injurious to customers, including PEELUA."  *Id.* ¶ 41.

As to Count II, Plaintiff's theory of an unfair and deceptive trade

practice does not state a claim under § 480-2 against MERS and Impac.  In

granting summary judgment against a borrower on a § 480-2 claim, this court in

*McCarty v. GCP Management, LLC*, 2010 WL 4812763 (D. Haw. Nov. 17, 2010),

relied on the rule that "lenders generally owe no duty to a borrower 'not to place

borrowers in a loan even where there was a foreseeable risk borrowers would be

unable to repay.'" *Id.* at *6 (quoting *Champlaie v. BAC Home Loans Servicing,

LP*, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)).  And, as cited in *McCarty*,

ample authority supports this proposition.  *See Sheets v. DHI Mortg. Co.*, 2009 WL

2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a

lender 'to determine the borrower's ability to repay the loan . . . .  The lender's

efforts to determine the creditworthiness and ability to repay by a borrower are for

the lender's protection, not the borrower's.'" (quoting *Renteria v. United States*,

452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) (finding that borrowers "had to rely

on their own judgment and risk assessment to determine whether or not to accept

the loan")).  Indeed, "as a general rule, a financial institution owes no duty of care

to a borrower when the institution's involvement in the loan transaction does not

exceed the scope of its conventional role as a mere lender of money." *Nymark v.

Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. App. 1991).  Nothing in

the Complaint indicates that MERS and/or Impac "exceed[ed] the scope of [a]

conventional role as a mere lender of money" and therefore Count II fails as to

these Defendants.[7]

As for Count V, it is wholly conclusory, not even paying lip service to the general elements of a claim for violation of HRS § 480-2 and instead stating nothing more than the *conclusion* that a violation occurred. In other words, Plaintiff has not pled any "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although Plaintiff asserts that allegations in support of *other* claims may support a violation of HRS § 480-2, Pl.'s Opp'n at 21-23, Count V on its own does not include such allegations and does not incorporate any other paragraphs of the Complaint. Count V therefore fails to provide notice of the basis of this claim.

Accordingly, the court GRANTS the Motion as to Counts II and V. Count II is dismissed as to Impac and MERS, and Count V is dismissed as to all Defendants, with leave to amend as to both Counts. Should Plaintiff file an amended complaint, he is cautioned that he should not file two separate counts claiming a violation of HRS § 480-2.

## C.     Fraud and Predatory Lending (Count III)

Although Count III is labeled "Fraud and Predatory Lending," it is

---

[7] Because HFS and Paleka were brokers, as opposed to lenders, this dismissal of Count II is as to MERS and Impac only.

unclear whether Plaintiff is attempting to make a claim of: (1) fraud, (2) predatory lending, or (3) some hybrid of the two. Whatever its intent, Count III asserts that HFS, Paleka, Impac, and MERS made false representations to Plaintiff "with knowledge that they were false and with knowledge that [Plaintiffs] would rely upon them." Compl. ¶¶ 34-35. The Complaint further asserts that these Defendants engaged in fraud and predatory lending by failing to notify Plaintiff that he "would be better off without making the loans." *Id.* ¶¶ 36-37.

These allegations are insufficient to meet Plaintiff's burden under Rule 8, much less the more rigorous requirements of Rule 9 that apply to claims of fraud. *See* Fed. R. Civ. P. 9(b) (requiring a party to state with particularity the circumstances constituting fraud or mistake). Instead, these allegations merely give lip service to the basic elements of a fraud claim, and fail to assert "particularized allegations of the circumstances *constituting* fraud" such as the time, place, and nature of the alleged fraud, and how each Defendant participated in the fraud. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d at 1547-48. Indeed, the Complaint leaves completely unanswered precisely what actions each Defendant took that can form the basis of a fraud claim. *See also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (stating that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual

defendants).

Further, to the extent the Complaint attempts to assert a stand-alone claim for "predatory lending," courts have found that there is no common law claim for "predatory lending."  *See Haidar v. BAC Home Loans Servicing, LP*, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); *Pham v. Bank of Am., N.A.*, 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending.").  To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in another statutory or common-law cause of action such as fraud -- the term "predatory lending" is otherwise too broad.  *See Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend -- agreeing that the term is expansive and fails to provide proper notice, where Defendants "are left to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); *see also Hambrick v. Bear Stearns Residential Mortg.*, 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending where plaintiffs failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.'  The court is unaware of any such cause of action.").

The court does not mean to imply that "predatory lending" is improper and cannot form the basis of some cause of action. But Hawaii courts have not recognized "predatory lending" itself as a common-law cause of action, and the precise elements of such a claim are undefined. The ambiguous term "predatory lending" potentially encompasses a wide variety of types of alleged wrongdoing, and Plaintiff has failed to allege this claim with sufficient particularity to explain the basis of this claim.

Accordingly, the court dismisses Count III as to HFS, Paleka, Impac, and MERS. Plaintiff is granted leave to amend to allow an opportunity for Plaintiff to attempt to state a cause of action based on specific activities (which others might otherwise describe as "predatory") under a recognized statutory or common-law theory as to HFS, Paleka, Impac, and MERS. Plaintiff is cautioned that any amended complaint must be clear as to what claim Plaintiff is making, and whether the claim is based on fraud or some other theory.

## D.    Federal Truth in Lending Act and RESPA Violations (Count IV)

Count IV, like many other counts, appears to combine two distinct causes of action into one count. As asserted in the Complaint, the Plaintiff asserts that Defendants HFS, Paleka, Impac, and MERS violated RESPA *and* TILA by:

> (a)    By not providing PEELUA with a required Initial
> Good Faith Estimate within 3 business days as required

by the Truth in Lending Act.
(b)     The Federal Truth in Lending Act Disclosure was
not provided as required by 12 CFR § 226.17.
(c)     By not making the required Notice of Right to
Cancel as required by Regulation Z § 226.23(b)(1)(i-v) of
the Federal Truth in Lending Act.
(d)     By failing to make required initial disclosures and
final disclosures as required by said acts.

Compl. ¶ 39.  As explained below, these allegations are insufficient to state a

RESPA or TILA violation.

### 1.     *RESPA*

Plaintiff's allegations that various Defendants failed to provide

various TILA disclosures and make other (unnamed) initial and final disclosures

fail to state a violation of RESPA.

In general, only three sections of RESPA create a private right of

action: (1) 12 U.S.C. § 2605 requiring disclosure to a loan applicant of whether the

servicing of the loan may be assigned, sold or transferred; notice to the borrower at

the time of transfer; and responses by the loan servicer to qualified written requests

by the borrower; (2) 12 U.S.C. § 2607 prohibiting kickbacks for real estate

settlement services; and (3) 12 U.S.C. § 2608 prohibiting sellers from requiring

buyers to use a specific title insurer as a condition of its sale.  *See also Padilla v.*

*One West Bank*, 2010 WL 5300900, at *5 (N.D. Cal. Dec. 20, 2010); *Glover v.*

*Fremont Inv. & Loan*, 2009 WL 5114001, at *5 (N.D. Cal. Dec. 18, 2009).  The

Complaint does not assert a violation of any of these sections.

Further, although RESPA outlines several disclosure requirements for lenders, none of those sections creates a private cause of action. Specifically, § 2603 requires lenders to provide a HUD-1 Settlement Statement explaining "all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement," and § 2604 requires lenders to provide to loan applicants a standardized "special information booklet" discussing settlement costs associated with the loan and "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur." It is well-settled, however, that neither section creates a private cause of action. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010).

Accordingly, Plaintiff cannot state a RESPA claim for any alleged failure of Defendants to provide a Good Faith Estimate or any other TILA disclosures. The court therefore GRANTS Defendants' Motion as to Plaintiff's RESPA claim. Given that the entire basis of Plaintiff's RESPA claim is Defendants' failure to provide Plaintiff certain information prior to or during the consummation of the loans and that this alleged failure is not a valid basis for a RESPA claim, the court finds that Plaintiff should not be granted leave to amend. The Complaint offers no other basis that could support a RESPA claim such that

granting Plaintiff leave to amend to state a different violation of RESPA would be tantamount to allowing Plaintiff to state a wholly new claim. This dismissal is therefore without leave to amend, and applies to all Defendants.

### 2. TILA

Moving Defendants argue that Plaintiff's TILA claims for damages and rescission are time-barred. The court agrees.

### a. Damages under TILA

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). For violations of TILA's disclosure requirements, this one-year period generally begins to run from the date of consummation of the loan. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Equitable tolling may nonetheless apply in certain circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule, the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations

period accordingly.

*Id.* Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

On its face, Plaintiff's TILA claim for damages is time-barred unless equitable tolling applies -- it was brought almost three years after consummation of the loan transaction. With that said, however, the Complaint pleads no facts indicating that any Defendant prevented Plaintiff from discovering the alleged TILA violation or caused Plaintiff to allow the filing deadline to pass. *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Without any factual allegations that support the inference that Plaintiff did not have a reasonable opportunity to discover the TILA violations, the Complaint, even when liberally construed, does not support tolling the statute of limitations. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint

to allege lack of reasonable notice to establish diligence where the facts alleged did not foreclose lack of reasonable notice as a matter of law); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).

In opposition, Plaintiff argues that the Complaint pleads facts showing that Defendants confused Plaintiff with conflicting communications regarding who owns the loan such that Plaintiff would not have known who to contact regarding rescinding the loan. Pl.'s Opp'n 20-21. Even if true, however, such allegations do not address when Plaintiff first learned of the TILA violations or explain why Plaintiff could not request rescission from multiple parties (especially given that he had two mortgages on the subject property). As such, Plaintiff has not asserted enough facts to trigger equitable tolling of his TILA claim for damages.

Accordingly, the court GRANTS Moving Defendants' Motion as to Plaintiff's TILA claim for damages, but grants Plaintiff leave to amend. This dismissal is as to all Defendants.

b.    *Rescission under TILA*

Plaintiff's claim for rescission pursuant to TILA fails. Rescission is

not possible because the subject property has been sold.  Specifically, TILA provides in relevant part that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." 15 U.S.C. § 1635(f); *see also* 12 C.F.R. § 226.23(a)(3)  ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.").  It does not matter if the sale was not voluntary -- the Official Staff Commentary to Regulation Z explains that "[a] sale or transfer of the property need not be voluntary to terminate the right to rescind.  For example, a foreclosure sale would terminate an unexpired right to rescind."  Official Staff Commentary to Reg. Z, 12 C.F.R. § 226.23(a)(3); *see also Rodenhurst v. Bank of Am.*, 2011 WL 768674, at *7 (D. Haw. Feb. 23, 2011); *Valdez v. Flexpoint Funding Corp*., 2010 WL 3001922, at *7 (D. Haw. July 30, 2010).  Where the subject property was sold to Deutsche Bank, Plaintiff cannot seek rescission pursuant to TILA.

Accordingly, the court GRANTS Moving Defendants' Motion as to the claim for rescission pursuant to TILA without leave to amend.  This dismissal is as to all Defendants.

**E.      Wrongful Foreclosure and Ejectment (Count VI)**

Count VI asserts that all Defendants "acting alone and in concert, negligently and wrongfully engaged in a series of events which resulted in the wrongful foreclosure of Mortgage 1 upon the [subject property] and [Plaintiff's] eventual loss of the [subject property]." Compl. ¶ 58. In support of this conclusion, the Complaint explains that Plaintiff was notified by Countrywide, as an agent of Impac, that Plaintiff was delinquent on his mortgage loan payments, *id.* ¶ 43, but that Indymac Bank and Indymac Loan also notified Plaintiff that he was obligated to them based on the second mortgage. *Id.* ¶ 44. In the meantime, Plaintiff was also contacted by and made arrangements to pay the arrearage to BOA. *Id.* ¶¶ 46-47.

Despite this arrangement with BOA and BOA's assertion that it would stop the foreclosure proceedings on the first mortgage, on January 29, 2009, Deutsche Bank filed a Notice of Mortgagee's Intention to Foreclose Under Power of Sale. *Id.* ¶ 49. The subject property was subsequently sold to Deutsche Bank, and Deutsche Bank brought an ejectment action against Plaintiff. *Id.* ¶¶ 50, 56. The Complaint asserts that Deutsche Bank was not the mortgagee on the first mortgage on the subject property, and has not produced any evidence that it owned the mortgage note at the time of the non-judicial foreclosure. *Id.* ¶¶ 54-55.

As an initial matter, as a claim for wrongful foreclosure, these allegations leave completely unclear precisely how all Defendants acted "alone and in concert" with one another to cause the alleged wrongful foreclosure. Deutsche Bank is the entity that foreclosed on the subject property, purchased the subject property, and brought the state court ejectment action. Although certain Defendants may have engaged in activities that are tangentially related to the ultimate foreclosure, without more, the Complaint fails to explain how those actions of any Defendant other than Deutsche Bank caused the foreclosure and/or created liability for "wrongful foreclosure." Accordingly, Count VI as to all Defendants other than Deutsche Bank fails on this basis.

As to Deutsche Bank, Moving Defendants argue, and the court agrees, that this claim was a compulsory counterclaim that Plaintiff should have raised in the state court ejectment action such that he is barred from raising it now.

Hawaii state law governs the preclusive effect of the failure to raise a compulsory counterclaim in an earlier state court action, *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1253 (9th Cir. 1987). And under Hawaii law, "where a defendant has had the opportunity but has failed to assert a compulsory counterclaim in an action, Rule 13(a)[8] estops him from asserting such claim in a

---

8 Hawaii Rule of Civil Procedure 13(a) provides:

(continued...)

subsequent action." *Bailey v. State*, 57 Haw. 144, 148, 552 P.2d 365, 369 (1976);

*see also Ellis v. Crockett*, 51 Haw. 45, 53-54, 451 P.2d 814, 821 (1969) ("Issues

which must be raised by way of compulsory counterclaim may not thereafter be

raised in an independent action against the same parties who were plaintiffs in the

former suit.").  The rationale of this rule is "to prevent multiplicity of actions and

to achieve resolution in a single lawsuit of all disputes arising out of common

matters," *Bailey*, 57 Haw. at 148, 552 P.2d at 368, and is "directed against one who

failed to assert a counterclaim in one action and then instituted a second action in

which that counterclaim became the basis of the complaint."  *Ellis*, 51 Haw. at 54,

451 P.2d at 821.

   A counterclaim is compulsory if it bears a logical relationship to the

original claim:

   A claim has a logical relationship to the original claim if

---

 [8](...continued)
   Compulsory Counterclaims.  A pleading shall state as a
   counterclaim any claim which at the time of serving the pleading
   the pleader has against any opposing party, if it arises out of the
   transaction or occurrence that is the subject matter of the opposing
   party's claim and does not require for its adjudication the presence
   of third parties of whom the court cannot acquire jurisdiction.  But
   the pleader need not state the claim if (1) at the time the action was
   commenced the claim was the subject of another pending action or
   (2) the opposing party brought suit upon the claim by attachment
   or other process by which the court did not acquire jurisdiction to
   render a personal judgment on that claim, and the pleader is not
   stating any counterclaim under this Rule 13.

> it arises out of the same aggregate of operative facts as
> the original claim either because the same aggregate
> operating facts serves as a basis of both claims or the
> core of facts upon which the original claim rests activates
> additional legal rights in party defendant that otherwise
> would remain dormant.

*Booth v. Lewis*, 8 Haw. App. 249, 253, 798 P.2d 447, 449 (1990) (citations

omitted).

Comparing Count VI to the state court ejectment action, there is a

clear logical relationship between the two.  In the state court ejectment action,

Deutsche Bank sought possession of the subject property on the basis that it is the

fee simple owner of the subject property due to the non-judicial foreclosure sale

and that Plaintiff is wrongfully occupying the subject property.  Defs.' Ex. G.  In

this action, Plaintiff asserts that Deutsche Bank wrongfully foreclosed on the

subject property, and seeks rescission and damages for Plaintiff's loss of the

subject property.  Compl. ¶¶ 58-59.  Thus, both the state court ejectment action and

this action involve the same operating facts of Deutsche Bank's foreclosure and

subsequent purchase of the subject property.  Plaintiff never brought a

counterclaim for wrongful foreclosure in the state court ejectment action and the

Hawaii state court entered judgment against Plaintiff.  *See* Defs.' Ex. I.

Accordingly, Plaintiff's claim for wrongful foreclosure was a compulsory

counterclaim in the state court ejectment action such that Plaintiff cannot now raise

it in this action.

In opposition, Plaintiff argues that he did not have an opportunity to raise a counterclaim in the state court ejectment action because he objected to the court's jurisdiction over this real property dispute. *See* Pl.'s Opp'n 23-24. The court rejects this argument -- the state court found that it had jurisdiction and ultimately rendered judgment against Plaintiff, and in any event, Plaintiff could have asserted his counterclaim while at the same time raising the court's jurisdiction. *See Teyseer Cement Co. v. Halla Mar. Corp.*, 794 F.2d 472, 478 (9th Cir. 1986) (noting that assertion of a compulsory counterclaim does not constitute waiver of jurisdictional defenses).

In sum, because Plaintiff failed to raise a counterclaim asserting wrongful foreclosure in the state court ejectment action, he is barred from raising it now in this action. The court therefore GRANTS Moving Defendants' Motion as to Count VI. This dismissal is as to all Defendants and because amendment would be futile, this dismissal is without leave to amend.

## F.    Leave to Amend

Moving Defendants argue that Plaintiff should not be granted leave to amend because the deadline for motions to amend pleadings has already passed and Plaintiff cannot establish the "good cause" necessary to amend a scheduling

order.  *See* Fed. R. Civ. P. 16(b)(4).  The good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order; if the party seeking the modification was not diligent, the court should deny the motion.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).  Although Plaintiff did not seek to amend his Complaint before the deadline to amend pleadings passed, the court finds that Plaintiff should still be granted an opportunity to correct the deficiencies above (where not futile) given that Defendants did not raise these detailed arguments until after the deadline had already passed.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS Moving Defendants' Motion for Judgment on the Pleadings with leave to amend as to specific counts as explained above.

To be clear, Counts I and II of the Complaint against HFS and Paleka remain, and all other claims against all other Defendants are dismissed.  If Plaintiff so chooses, Plaintiff may file a first amended complaint addressing the deficiencies described above for Counts I and II as to MERS and Impac, Count III and V as to all Defendants, and Count IV to the extent it states a TILA damages claim, by

///

///

April 8, 2011.  Failure to file an amended complaint by April 8, 2011 will result in

dismissal of those claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 18, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Peelua v. Impac Funding Corp. et al.*, Civ. No. 10-00090 JMS/KSC, Order:  (1) Granting
Defendants Impac Funding Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB,
Countrywide Financial Corp., and Bank of America's Motion for Judgment on the Pleadings; and
(2) Dismissing Claims Against Additional Defendants